THE STATE OF OHIO, APPELLEE, *v.* MAUST ET AL., APPELLANTS.

(Nos. CA-751 and 752—Decided March 1, 1982.)

*Mr. W. David Montague,* for appellee.
*Messrs. Wilson, Murray, Anderson & Vercillo* and *Mr. Damian J. Vercillo,* for appellants Tim Maust and Jane E. Ernsberger.

MILLIGAN, J. These two cases were consolidated for hearing and ruling.

The defendants were convicted of the criminal damaging of a motor vehicle (R.C. 2909.06[A][1]) after a joint trial by jury in the Municipal Court of Ashland. After sentencing, they appeal, assigning two errors:

"I. The trial court erred in overruling defendants' motion for an order dismissing the complaints against the defendants at the close of the state's case in that the state failed to present sufficient evidence to establish all elements of the offense charged, specifically, ownership of the 1975 Chevrolet Monza by Jerry A. Harned, lack of consent or privilege, and loss of value due to damage; and also, in that there was a variance between the allegations of the complaint and the evidence necessitating dismissal.

"II. The trial court erred in overruling defendants' motion for an order dismissing the complaints against the defendants at the close of all the evidence in that the state failed to present sufficient evidence to establish beyond a reasonable doubt all elements of the offense charged, specifically, ownership of the 1975 Chevrolet Monza by Jerry A. Harned, lack of consent or privilege, and loss of value due to damage; and also, in that there was a variance between the allegations of the complaint and the evidence necessitating dismissal."

The assignments of error attack the proceedings on the same grounds at different stages thereof. (The first assignment deals with the failure to dismiss at the end of the state's case, and the second assignment with such failure at the end of the trial.) They will be considered together.

The victim, Jerry A. Harned, was driving a 1975 Chevrolet Monza. While driving in the area of Claremont Avenue, the victim went over the "dotted white line." The defendants, in another vehicle, pulled alongside the victim and hollered at him. The victim then entered a municipal parking lot and the defendants ultimately entered the lot from another entrance. Although denied by the defendants, the victim testified, and the jury obviously believed, that the defendants left their vehicle and beat upon the vehicle operated by him. Photographs of the dents and missing windshield wiper were admitted in evidence.

As to defendant Ernsberger, the complaint alleged that she "* * * did knowingly cause and create a substantial risk of physical harm to property, to-wit: a 1975 Chevrolet Monza automobile of another, to-wit: Jerry A. Harned without said other's consent, to-wit: by kicking the passenger-side door and pulling off the passenger-side windshield wiper * * *."

The complaint as to defendant Maust stated that he "* * * did knowingly cause and create a substantial risk of physical harm to property, to-wit: a 1975 Chevrolet Monza automobile of another, to-wit: Jerry A. Harned, without said other's consent, to-wit: by kicking the left front fender and quarter panel causing dents thereto; kicking and beating upon the driver-side door and by attempting to pull off the outside mirror on the driver's side * * *."

The assignments of error raise four questions:

I. In a criminal damaging case, must the state prove ownership of the damaged motor vehicle pursuant to the literal requirements of R.C. 4505.04, the Ohio Certificate of Motor Vehicle Title Law?

II. Is direct evidence of lack of consent to damage required, or may this element of the crime, R.C. 2909.06(A)(1), be proved by circumstantial evidence?

III. Where the evidence shows that the possessor of the damaged vehicle had purchased same, but had not yet acquired the certificate of title, and there is a variance between the evidence and the complaint as to identity of the person whose property is damaged, is the failure to amend the complaint a fatal defect necessitating dismissal?

IV. Must the state affirmatively show tangible damage resulting in loss of value?

We address the questions in order.

I

Compliance with certificate of title law

There was substantial testimony vis-a-vis the question of ownership of the motor vehicle. The victim, named in the complaint, took possession of the vehicle on the day of the alleged criminal damaging. He did not receive the certificate of title until six days later. The documents with the clerk of courts demonstrate that on that date the previous owner, Kenneth Rufener, assigned title to Bill Harris Chevrolet, Inc., and that Bill Harris Chevrolet assigned the title to the victim on June 11th.

It is clear that the victim, who was personally present, had purchased and taken possession of this automobile prior to the event in question. The bureaucratic manipulation of the transfer of title followed.

The comments of the Montgomery County Court of Appeals speak prophetically to the issue at hand:

"The law [Certificate of Title Act] was enacted to protect the rightful owners of motor vehicles against the fraudulent claims of others, not to protect thieves from the rightful owners." *State v. Emmons* (1978), 57 Ohio App. 2d 173, 177 [11 O.O.3d 173].

See, also, *Grogan Chrysler-Plymouth v. Gottfried* (1978), 59 Ohio App. 2d 91 [13 O.O.3d 154], pointing out also that the purpose of the Act was to resolve litigation as between rival claimants to title.

In *Moore* v. *J. A. Wiseman Auto Body Shop* (March 4, 1981), Stark App. No. 5421, unreported, at pages 4-5, we said:

"R.C. 4505.04, which is known as the Ohio Certificate of Title Act, was enacted to provide protection from theft and fraud in the transfer of titles to motor vehicles. * * * The Court in the case of *Joiner* v. *The Illuminating Co.*, 55 Ohio App. 2d 187 [9 O.O.3d 340], 380 N.E. 2d 361, points out the [*sic*] R.C. 4505.04 now makes it clear that production of a certificate of title is not the exclusive method to prove ownership of an automobile in Ohio."

In this case, the gravamen of the complaint is not directed to one who is the

*owner* of a motor vehicle which has been damaged. The statute deals with "physical harm to any property of another." R.C. 2909.06. Although not necessary to the issue raised in this case, it can be argued that a right of possession is a sufficient "property" interest to protect one against the crime of criminal damaging.

The evidence in this case adequately supports the superior claim of the victim.

## II

Lack of consent to damage

The victim made this complaint. He attempted to avoid the confrontation in the parking lot. When he observed that the defendants had followed him into the parking lot, he attempted to leave. From all of the circumstantial evidence in this case, we conclude that the acts of the defendants were, within the meaning of the criminal damaging statute, "without his [victim's] consent."

## III

The variance between complaint and evidence, vis-a-vis certificate of title

The rationale included at Issue I is dispositive of this issue also. It is clear that the defendants had no claim or right with respect to this automobile. They were not prejudiced by the bureaucratic problems attendant the transfer of the actual certificate of title.

## IV

Loss of value

The evidence directly shows tangible damage to the automobile. Although loss of value from observable damage may be inferred, the statute also is violated when the damage interferes with its use or enjoyment.

No expert testimony is required to show loss of value under this section, where, among other things, the windshield wiper was torn off, impairing or interfering with the vehicle's use and enjoyment.

For the above reasons we answer all of the issues raised by the appellants and overrule both assignments of error in both cases.

*Judgments affirmed.*

HENDERSON, P.J., and McKEE, J., concur.